IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

CHRISTOPHER MAURICE         )
BUCKLEY,                    )
                            )
       Plaintiff,           )
                            )
v.                          )   Case No. CIV-21-38-RAW-SPS
                            )
KILOLO KIJAKAZI,[1]         )
Acting Commissioner of the Social )
Security Administration,    )
                            )
       Defendant.           )

## REPORT AND RECOMMENDATION

The claimant Christopher Maurice Buckley requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, the Court may not reweigh the evidence nor

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-seven years old at the time of the administrative hearing (Tr. 38). He completed the eleventh grade and has no past relevant work (Tr. 23, 206). The claimant alleges he has been unable to work since November 30, 2018, due to problems with both shoulders (Tr. 205).

### Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 30, 2018. His application was denied. ALJ Laura Roberts conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated July 1, 2020 (Tr. 15-25). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that he was unable to reach overhead bilaterally. Additionally, she found he should not climb ropes/ladders/scaffolds or crawl, but that he

could frequently crouch, stoop, kneel, climb ramps/stairs, balance, and handle/finger with the right upper extremity (Tr. 19-20).  The ALJ concluded that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *e. g.*, small product assembler, inspector packer, and electrical accessories assembler (Tr. 23-24).

## Review

The claimant contends that the ALJ erred by:  (i) failing to properly account for reaching and lifting limitations assigned by a physician, and (ii) failing to account for additional limitations related to his depression.  The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of right shoulder rotator cuff tear, acromioclavicular joint arthritis, cervical spondylosis and radiculopathy, left shoulder rotator cuff tear, and right knee osteoarthritis, as well as the nonsevere impairments of depression and hypertension (Tr. 18). The relevant medical evidence reflects the claimant had problems with both of his shoulders.  In August 2018, he complained of bilateral shoulder pain and an x-ray of the left shoulder showed increased sclerosis of the greater tuberosity minimal degenerative changes of the glenohumeral joint that was suspicious for a tear (Tr. 442-446).  Dr. Therron Nichols indicated he had an incomplete tear of the left shoulder and a complete tear of the right shoulder (Tr. 446).  He further indicated the claimant had a complete tear of the right shoulder and dislocation of the AC joint, in which he stated that he did not expect improvement of symptoms and did

not think the claimant could return to any type of work where he reaches away from the waist, and that he should avoid lifting, carrying, pushing, and pulling (Tr. 446). He again complained of bilateral shoulder pain in November 2018, but the assessment at that time only reflected the partial tear of the left shoulder, but included *no* diagnosis of the right shoulder (Tr. 450). In January 2019, the claimant was assessed with a torn rotator cuff of the left shoulder and underwent an arthroscopy on January 25, 2019 (Tr. 282-284, 304). In the months following the procedure, the claimant noted some continued pain aggravated by lifting and movement, with decreased mobility as well as instability, tenderness, and tingling (Tr. 401-414, 464-486).

On July 13, 2019, Dr. John Schipul, M.D., conducted a physical examination of the claimant. Upon exam, his muscle strength was 5/5 in all areas, with no muscle spasms (Tr. 424). Additionally, his hands and fingers appeared normal, and he could squat and rise from that position with ease, as well as rise from a sitting position without assistance, heel/toe walk, tandem walk, and hop on either foot (Tr. 424-425). He noted that the claimant had decreased range of motion of the shoulder, but that the claimant was otherwise within normal limits (Tr. 425-429).

An August 2019 x-ray of the right shoulder revealed rotator cuff pathology (Tr. 432). An x-ray that same day of the right knee showed the probable beginning of osteoarthritic change with mild thinning of the articular cartilage of the right knee (Tr. 432). X-rays from November 2019 and January 2020 of the left shoulder did not show signs of a complete rotator cuff repair, but an MRI would be required to show a partial tear (Tr. 487, 498).

On January 22, 2020, the claimant also complained of bilateral shoulder pain, and was assessed with radiculopathy of the cervical region and carpal tunnel syndrome on both sides (Tr. 488-491). An MRI of the cervical spine showed C6-C7 left paracentral protrusion with nerve root effacement, as well as multilevel spondylosis with mild increase in size of disc osteophyte complex at C5-C6 (Tr. 497).

On March 11, 2019, the claimant was screened for depression, but indicated he did not at all feel down, depressed, or hopeless, and was not experiencing feelings of little interest or pleasure in doing things (Tr. 586). On September 6, 2019, the claimant was initially treated for depression, related to chronic pain and irritability (Tr. 616). By March 17, 2020, the claimant was examined and treated for pain management, hypertension, and chronic conditions, but was negative for anxiety and depression upon screening (Tr. 648-649).

State reviewing physicians determined initially and upon review that the claimant could perform light work but was limited bilaterally in overhead reaching to occasional (Tr. 73-76, 86-87). There was no reviewing assessment done as to mental impairments.

In her written opinion at step two, the ALJ found the claimant's depression to be a nonsevere impairment, noting that he had only mild limitations in the broad functional areas of mental functioning (Tr. 18-19). She noted that the step two findings were not a replacement for the RFC, but that the RFC reflected the degree of limitation found in the mental function analysis (Tr. 19). At step four, the ALJ summarized the claimant's administrative hearing testimony, as well as much of the medical evidence of record. As relevant to this appeal, the ALJ summarized the claimant's history of shoulder pain with

surgery and cervical pain with radiculopathy and spinal stenosis (Tr. 20-21). She further noted Dr. Schipul's largely normal exam, except for the decreased range of motion of the shoulders, as well as the x-rays from July 2019 and November 2019, and the MRI in January 2020 (Tr. 22). As to the state reviewing physicians, she agreed that the light exertional restriction with reaching limitations were persuasive, but found further limitations were warranted due to cervical, knee, and shoulder issues (Tr. 23). She found Dr. Nichols's opinion persuasive as to the need for reaching limitations, but unpersuasive as to further exertional limitations because the consultative exam results indicated his muscle strength was intact (Tr. 23). She thus found that the claimant had restricted range of motion in his bilateral shoulders, but normal range of motion in other extremities and joints, and that imaging of his neck and shoulder supported some postural and manipulative limitations, but that his partial improvement after surgery and the consultative exam supported a light RFC (Tr. 23).

  The claimant first contends that the ALJ erred in failing to properly credit Dr. Nichols's opinion that the claimant could not reach away from the waist and should avoid lifting, carrying, pushing, and pulling (Tr. 446). She contends that this should have been incorporated in the RFC and it would have resulted in a finding that the claimant is disabled. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by

considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The undersigned Magistrate Judge finds that the ALJ's treatment of Dr. Nichols's opinion was appropriate. She found his opinion persuasive that the claimant needed a limitation as to reaching but otherwise unpersuasive as to more extreme limitations. She relied on the more recent in-person consultative examination to state that Dr. Nichols's restriction from all lifting, carrying, pushing, and pulling was not supported (Tr. 23). Thus, the ALJ's opinion was sufficiently clear for the Court to determine the weight she gave to the opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509

F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). The undersigned Magistrate Judge thus finds that the ALJ properly considered Dr. Nichols's opinion, along with all the other opinions in the record, in concert with the medical evidence and in accordance with the proper standards.

Next, the claimant asserts that the ALJ erred failing to find his depression to be a severe impairment. Even assuming *arguendo* that this *was* error by the ALJ, such error was nevertheless harmless because the ALJ *did find* the claimant's right shoulder rotator cuff tear, acromioclavicular joint arthritis, cervical spondylosis and radiculopathy, left shoulder rotator cuff tear, and right knee osteoarthritis to be severe impairments, which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted].

As part of this argument, the claimant also contends that the ALJ erred at step four in assessing his RFC because she did not include limitations related to his depression in the RFC. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an

administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. The claimant asserts that the evidence does not support a finding that she can perform work at the assigned RFC level in light of his depression because the ALJ *could have* concluded that he would be off task too much and absent too frequently to maintain a job.

Contrary to claimant's arguments, however, the ALJ discussed all the evidence in the record and his reasons for reaching the RFC. He has pointed to no evidence in the record to support any limitations related to his depression, other than supposition. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting*

-10-

*Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect limitations related to any mental impairment, and he has pointed to no medical documentation providing further limitations. Because he points to no evidence other than his own assertions, the undersigned Magistrate Judge declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

In this case, the ALJ noted and fully discussed the findings of all of the claimant's various treating, consultative, and reviewing physicians, including the records related to the claimant's peripheral neuropathy. The undersigned Magistrate Judge finds that when all the evidence is taken into account, the conclusion that the claimant could perform the RFC stated above is well supported by substantial evidence. The undersigned Magistrate Judge finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting*

*Howard*, 379 F.3d at 949). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."). (citations omitted). Accordingly, the decision of the Commissioner should be affirmed.

### Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**